## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PAUL DAVIS,

      Petitioner,

      v.                          Case No. 17-CV-3162-JAR

DAN SCHNURR,

      Respondent.

## MEMORANDUM AND ORDER

      This matter is before the Court on a Petition for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1), seeking federal habeas relief from a state conviction, pursuant to 28 U.S.C. § 2254. Petitioner, Paul Davis, proceeding *pro se*, seeks relief, claiming ineffective assistance of trial and appellate counsel and due process violations. The State of Kansas has filed an Answer and Return (Doc. 22), and Petitioner filed a Traverse, along with Points and Authorities in Support (Docs. 29, 31). The motion is fully briefed, and the Court is prepared to rule. After a careful review of the record and the arguments presented, the Court denies Petitioner's motion without need for an evidentiary hearing.

## I.      Legal Standard

      The Court reviews Petitioner's challenges to state court proceedings pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA").[1] The AEDPA requires that federal courts give "significant deference to state court decisions" adjudicated on the merits.[2] Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state

---

[1] *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).

[2] *See id.*

court, unless the petitioner establishes the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court has "done on a set of materially indistinguishable facts" or "if the state court applies a rule different from the governing law" set forth in Supreme Court cases.[4] A decision is an "unreasonable application" of clearly established federal law if a "state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of [a petitioner's] case."[5] Additionally, "an unreasonable application may occur if [a] state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply."[6] Courts employ an objective standard in determining what is unreasonable.[7]

A federal court must presume the state court's factual findings, including credibility findings, are correct in the absence of clear and convincing evidence to the contrary.[8] The law "stops just 'short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.'"[9] Courts may not issue a writ of habeas corpus if "'fairminded

---

[3] *Williams v. Trammel*, 782 F.3d 1184, 1191 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

[4] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

[5] *Id.* (citing *Williams*, 529 U.S. at 407–08).

[6] *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

[7] *Bell*, 535 U.S. at 694 (2002) (citing *Williams*, 529 U.S. at 409–10).

[8] 28 U.S.C. § 2254(e)(1).

[9] *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

jurists could disagree' on the correctness of the state court's decision."[10] Even when a petitioner

has a strong case for relief, this "does not mean that the state court's contrary conclusion was

unreasonable."[11]

Finally, when deciding whether to grant an evidentiary hearing, "a federal court must

consider whether such a hearing could enable an applicant to prove the petition's factual

allegations, which, if true, would entitle the petitioner to federal habeas relief."[12] "Because the

deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court

must take into account those standards in deciding whether an evidentiary hearing is

appropriate."[13] If the record refutes the petitioner's factual allegations or otherwise precludes

habeas relief, a district court is not required to hold an evidentiary hearing.[14] If a habeas

petitioner has failed to develop the factual basis for his claim in state court, the district court is

precluded from granting an evidentiary hearing unless the petitioner establishes that the claim

relies on a new, retroactive rule of constitutional law or a factual predicate that could not have

been discovered except by due diligence.[15]

Because Davis proceeds *pro se*, the Court must construe his pleadings liberally and apply

a less stringent standard than what is applicable to attorneys.[16] However, the Court may not

provide additional factual allegations "to round out a [Petitioner's] complaint or construct a legal

---

[10] *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[11] *Id.* at 102.

[12] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

[13] *Id.*

[14] *Id.*

[15] 28 U.S.C. § 2254(e)(2); *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013).

[16] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

theory on a [Petitioner's] behalf."[17]  The Court need only accept as true Petitioner's "well-pleaded factual contentions, not his conclusory allegations."[18]

## II.      Factual and Procedural Background

Absent clear and convincing evidence to the contrary, a federal habeas court must presume that the state court's factual findings are correct.[19]  The facts underlying Petitioner's convictions for two counts of rape of a child, as determined by the Kansas Court of Appeals ("KCOA") on Petitioner's direct appeal, are as follows:

> On November 9, 2003, while returning from a shopping trip, 11–year–old T.G. told her mother, M.G., that her stepfather Davis inappropriately touched her. M.G. transported T.G. to a hospital where a medical exam was done, and the police and the Kansas Department of Social and Rehabilitation Services were contacted.
>
> A day later, Chief of Police David Lanning videotaped an interview with T.G. concerning her statements about what her stepfather had done. T.G. told Chief Lanning that after she arrived home from school Tuesday, November 4, 2003, Davis instructed her to go into M.G.'s bedroom where Davis took pictures of her as she removed her clothes. He began "touching [her] in places [she] didn't like and he was making [her] touch him." T.G. indicated that Davis touched her "bottom" and put his finger in her "private."
>
> Further, T.G. stated Davis wore "rubber things" on his penis, inserted his penis in her "private," and "wouldn't get off of [her] until, like, he came." T.G. also recounted that when Davis laid her face down on a dresser and "put his tongue in [her] private." Although T.G. did not know the frequency of these incidents—possibly "more than ten times"—she later indicated to Chief Lanning that the same events also happened on Monday, November 3.
>
> Later that day, Sexual Assault Nurse Examiner Joy Thomas interviewed T.G. and conducted a physical exam at a Topeka hospital. Thomas performed a complete physical and noted T.G.'s

---

[17] *Whitney*, 113 F.3d at 1773.

[18] *E.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[19] 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

colposcopic exam revealed no sign of trauma, irregularities, or abnormalities.

Chief Lanning accompanied M.G. back to her home. When they arrived, Chief Lanning discovered a note Davis left on the door expressing his frustration with the situation and that he was leaving. Chief Lanning searched the house, found that the trash was empty, and he was unable to locate a camera, a tripod, or condoms.

Based on T.G.'s allegations, the State filed a complaint on November 13, 2003, charging Davis with two counts of rape and two counts of aggravated indecent liberties with a child. The State specifically alleged that one count of rape and one count of indecent liberties occurred on November 3, 2003, and one count of rape and one count of indecent liberties occurred on November 4, 2003. A warrant was issued for Davis' arrest.

Davis was arrested almost 5 years later in North Carolina. He had spent several years living with "a bunch of hippies" on a communal farm in northern Missouri, had cleared debris from Hurricanes Ivan and Katrina in Florida and Mississippi, and had backpacked several hundred miles of the Katy Stark and Appalachian trails. Davis was returning from a picnic with his new wife when a police officer stopped his vehicle for failing to display a required sticker in the vehicle's window.

Before trial on June 26, 2009, Davis filed five pro se motions, including a motion to suppress the 2003 videotape of Chief Lanning's interview of T.G, Davis suggested the use of the videotape would violate his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because Chief Lanning acquired T.G .'s statements using leading questions. Davis also claimed admission of the videotape would violate several statutory provisions including K.S.A. 60–460(a) and (dd) (hearsay statements involving children), K.S.A. 22–2903 (exclusion and separation of witnesses), K .S.A. 22–3211 (depositions), K.S.A. 22–3433(a)(5) (child victim's recorded statement), and K.S.A. 22–3434 (child victim's videotaped testimony).

After a hearing, the district court denied Davis' motion to suppress, stating: (1) There was no confrontation clause issue because T.G. was going to testify; (2) if the questions were "terribly leading" or "terribly unfair," Davis could cross-examine Chief Lanning to determine "how he did it [and] why he did it;"

(3) the rules of evidence do not apply to a witness giving a statement during an investigation for a crime; (4) admitting the video did not violate the intended purpose of K.S.A. 22–2903; (5) there was no hearsay issue because T.G. would be present to testify; (6) T.G.'s recorded interview was not a deposition or videotaped testimony; (7) the difference between T.G.'s age at the time of her interview and her current age was a benefit more than a prejudice; and (8) the admission of the videotape did not prejudice his right to a fair trial.

A jury convicted Davis of two counts of rape of a child under 14 years of age and two counts of indecent liberties with a child. Before sentencing, Davis filed a motion for judgment of acquittal and a motion for a new trial arguing that the State failed to prove him guilty beyond a reasonable doubt. Davis also alleged the district court erred in allowing the State to admit evidence of his alleged prior sexual acts with T.G., admitting the videotape of T.G.'s interview without an accurate transcript, refusing to allow two witnesses to testify concerning his reputation for honesty and truthfulness, and by denying his pro se pretrial motions.

Prior to sentencing, the district court heard arguments concerning Davis' posttrial motions. The district court denied Davis' motion for judgment of acquittal, noting the evidence was presented to the jury and "[t]he jury made their decision." The district court also denied his motion for a new trial, stating the two witnesses he wanted to testify were irrelevant because they did not know Davis at the time of the alleged crimes and the State did not attack his reputation for honesty and truthfulness. Further, the district court held that although the first transcript of the videotape omitted entire sentences, the second transcript was sufficient to satisfy K.S.A. 22–3433(8).

Moreover, the district court denied Davis' argument that it erred by admitting evidence he committed a crime or civil wrong on a specified occasion. The district court found the evidence was admissible because it was relevant to prove Davis' opportunity, plan, and preparation. Additionally, the district court had provided the jury with the recommended limiting instruction. Finally, the district court reviewed its previous rulings on Davis' pro se pretrial motions and concluded those rulings were correct. The district court sentenced Davis to 254 months in prison, with 36 months' postrelease supervision.[20]

---

[20] *State v. Davis*, 258 P.3d 387 (Table), 2011 WL 3795243, at *1–2 (Kan. Ct. App. 2011).

The KCOA affirmed Davis' conviction and sentence, and the Kansas Supreme Court denied review.[21] On May 28, 2012, Petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court, which was denied on October 1, 2012.[22] On December 28, 2012, Petitioner filed a motion for new trial based on newly discovered evidence, which was denied by the district court on January 2, 2013.[23] The KCOA affirmed the denial on August 23, 2018.[24]

On July 15, 2013, Petitioner filed a motion for post-conviction relief pursuant to K.S.A. § 60-1507 in the District Court of Jackson County, Kansas.[25] The district court denied Petitioner's motion for K.S.A. § 60-1507 relief as untimely and successive and refused to consider the merits of the claims.[26] Petitioner appealed. On March 28, 2014, the KCOA reversed, in part, the district court's finding that Petitioner's K.S.A. § 60-1507 motion was untimely and successive and remanded to the district court for further proceedings.[27]

On June 30, 2015, the district court held a two-day evidentiary hearing on Petitioner's K.S.A. § 60-1507 motion.[28] On August 10, 2015, the district court denied Petitioner's motion.[29] On September 23, 2016, the KCOA affirmed the denial of the motion.[30] On October 7, 2016, Petitioner filed a Motion for Rehearing or Modification, which was denied on October 27, 2016. On October 17, 2016, Petitioner petitioned the Kansas Supreme Court for review.[31] The

---

[21] *Id.*

[22] *Davis v. Kansas*, 568 U.S. 861 (2012).

[23] Case No. 03-CR-344, R. Vol. I, 260.

[24] *State v. Davis*, 306 P.3d 337 (Table), 2013 WL 4566450 (Kan. Ct. App. 2013) (unpublished opinion).

[25] Case No. 13-CV-49, R. Vol. II, 2–84.

[26] *Id.*

[27] *Davis v. State*, 321 P.3d 37 (Table), 2014 WL 1302636 (Kan. Ct. App. 2014) (unpublished opinion).

[28] Case No. 13-CV-49, R. Vol. I, 113.

[29] *Id.* at R. Vol. II, 113–20, 123.

[30] *Davis v. State*, 380 P.3d 719 (Table), 2016 WL 5344256 (Kan. Ct. App. 2016) (unpublished opinion).

[31] Case No. 15-114436-A, Appellant's Petition for Review.

Supreme Court denied review on August 29, 2017. On September 14, 2017, Petitioner filed his application for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 before this Court.

## III. Discussion

### A. Admission of Transcript

Petitioner asserts that he was denied his constitutional rights to due process and a fair trial when the district court allowed the admission of a transcript of a videotaped interview between law enforcement and the victim. The Government asserts that Petitioner's due process claims are unexhausted and procedurally defaulted.

A federal court may not grant a writ of habeas corpus unless, pursuant to 28 U.S.C. § 2254(b)(1), the petitioner has exhausted the available state court remedies.[32] Under the exhaustion doctrine, "[a petitioner] must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[33] Therefore, "any claims not included in a petition for discretionary review are unexhausted."[34] Ordinarily, when a petitioner does not bring claims to the state's highest court, a claim is unexhausted.[35] However, if a petitioner's claims are barred under state law and it is too late to pursue relief in state court, a claim will be deemed exhausted because there are no state remedies available to the petitioner.[36]

Further, federal claims not "fairly presented to the state courts" are unexhausted. "'Fair presentation' requires more than presenting 'all the facts necessary to support the federal claim'

---

[32] *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014).

[33] *Id.*

[34] *Id.*

[35] *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

[36] *Verlarde v. Archuleta*, 740 F. App'x 740, 744 (10th Cir. 2016) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996) and *Coleman*, 501 U.S. at 732)).

to the state court or articulating a 'somewhat similar state-law claim.' 'Fair presentation' means that the petitioner has raised the 'substance' of the federal claim in state court."[37] "The allegations and supporting evidence must offer the state courts "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."[38]

Finally, even where the claim is considered exhausted because there are no state remedies available, the claim may be subject to dismissal for procedural default.[39] For a court to review a claim that has been procedurally defaulted, the petitioner must: (1) show cause for default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that the failure to consider the procedurally defaulted claim will result in a fundamental miscarriage of justice because the petitioner "made a 'credible' showing of actual innocence."[40] "Cause" requires the petitioner show that some objective external factor impeded efforts to comply with state procedural rules.[41] "Prejudice" requires the petitioner to demonstrate "actual prejudice as a result of the alleged violation of federal law."[42]

In his petition before this Court, Petitioner asserts "an error of constitutional dimension"[43] because "the jury was exposed to the extraneous influence of an unauthenticated transcript, prepared by the prosecution and presented as evidence to the jury during deliberations, absent any limiting instruction by the trial court."[44] In his appellate petition to the KCOA,

---

[37] *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Picard v. Connor*, 404 U.S. 270, 278 (1971)).

[38] *Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009) (citing *Anderson*, 459 U.S. at 6).

[39] *Frost*, 749 F.3d at 1231 (quoting *Coleman*, 501 U.S. at 735 n.1).

[40] *Id.* (citations omitted).

[41] *Spears v. Mullin*, 343 F.3d 1215, 1255 (10th Cir. 2003) (citing *Coleman*, 501 U.S. at 750).

[42] *Fairchild v. Trammel*, 784 F.3d 702, 719 (10th Cir. 2015) (quoting *Coleman*, 501 U.S. at 750).

[43] Doc. 1 at 5.

[44] Doc. 1-1 at 3.

however, Petitioner argued that "the district court made an error of law, and therefore abused its discretion, in admitting into evidence a transcript prepared based on the videotape recording of Lanning's interview of T.G."[45]  Indeed, the KCOA explicitly found that Petitioner did "not [allege] any error of constitutional magnitude."[46]  While Petitioner contends in his Traverse that any changes "were only to highlight relevant aspects of the nature of the error,"[47] it is the nature of the error that is the substance of the claim.  A claim based on the same facts is not enough; rather, the court must have "an opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim'"[48]  As the KCOA never considered whether the unauthenticated transcript raised due process concerns, the claim is unexhausted.

Petitioner asks the court to grant a stay and abeyance to seek state exhaustion on the issue.  The Court finds that Petitioner's claim is subject to an anticipatory procedural bar.[49]  Petitioner has already completed a full round of review through the Kansas state courts.  "The district court is not required to entertain a second or successive 60–1507 motion for similar relief on behalf of the same prisoner."[50]  Accordingly, Petitioner's due process claim will be "considered exhausted and procedurally defaulted for purposes of habeas relief,"[51] and the Court will consider whether Petitioner has established cause and prejudice to excuse his procedural default.

---

[45] Case No. 09-103543-A, Brief of Appellant at 17.

[46] *State v. Davis*, 258 P.3d 387 (Table), 2011 WL 3795243, at *5 (Kan. Ct. App. 2011) (unpublished opinion).

[47] Doc. 31 at 7.

[48] *Picard v. Connor*, 404 U.S. 270, 277 (1971).

[49] *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.").

[50] *State v. Kelly*, 248 P.3d 1282, 1285 (Kan. 2011).

[51] *Cannon v. Gibson*, 259 F.3d 1253, 1265 (10th Cir. 2001).

Petitioner asserts that he can establish cause through ineffective assistance of appellate counsel in failing to cite U.S. Supreme Court precedent.[52]  Petitioner asserts that *Trevino v. Thaler*, 569 U.S. 413 (2013), *United States v. Challoner*, 583 F.3d 745 (10th Cir. 2009), and *Coleman v. Thompson*, 501 U.S. 722 (1991) establish that ineffective assistance of appellate counsel may constitute cause here.[53]

> The question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made.  So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.[54]

Notably, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted."[55]  Petitioner presented the issue of whether appellate counsel failed to cite controlling precedents regarding the transcript issue in his K.S.A. 60-1507 motion.[56]  However, this claim asserted that appellate counsel was ineffective in failing to properly brief the burden of proof with regard to "harmlessness,"[57] a distinct claim from the one asserted here.  Accordingly, Petitioner's claim that his appellate counsel was ineffective for failing to assert that the unauthenticated transcript raised due process concerns is itself procedurally defaulted.

---

[52] Doc. 31 at 16.

[53] *Trevino* applies solely to excuse procedural default of ineffective assistance of trial counsel claims. *See Davila v. Davis*, 137 S. Ct. 2058, 2062–63 (2017) ("[Trevino] treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal.").

[54] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[55] *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

[56] Case No. 15-114436-A.

[57] *Id.* at 48.

Moreover, even if the Court liberally construes Petitioner's *pro se* ineffective assistance of appellate counsel to encompass the claim here, the Court finds that Petitioner cannot establish that his appellate counsel was ineffective under *Strickland*.

The Court reviews Petitioner's ineffective assistance of counsel claim under the familiar test set forth in *Strickland v. Washington*, which requires Petitioner to show that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) counsel's performance prejudiced his defense.[58]  The Court's review under the first prong of this test is "highly deferential: 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"[59]  To be deficient, counsel's performance "must have been completely unreasonable, not merely wrong."[60] "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[61]  Under the prejudice prong, Petitioner must demonstrate that "but for counsel's errors, there is a reasonable probability 'the result of the proceeding would have been different.'"[62]

On direct appeal, Petitioner's counsel argued that the district court's admission of the transcript into evidence was improper, alleging that the district court failed to consider the framework required by Kansas law for admission of a transcript.[63]  Appellate counsel's strategic decision to frame the error as evidentiary, rather than constitutional, was reasonable professional judgment.  Indeed, the KCOA agreed with counsel, finding that the trial court's failure to apply

---

[58] 466 U.S. 668, 687–88 (1984).

[59] *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010) (quoting *Strickland*, 466 U.S. at 690).

[60] *Id.* (quoting *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999)).

[61] *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009).

[62] *Id.* (quoting *Strickland*, 466 U.S. at 694).

[63] Case No. 09-103543-A, Brief of Appellant at 18.

the proper framework constituted an error, but found that the error was harmless as Petitioner did not assert that the transcript was inaccurate.[64]  The Court finds that Petitioner's appellate counsel was not ineffective for failing to allege due process concerns with regard to the transcript. Petitioner's claim for due process violations is barred by the doctrine of procedural default.

Finally, Petitioner's claim regarding the improper admission of the transcript on evidentiary grounds is exhausted and ripe for review by this Court.  In evaluating an exhausted claim, the Court considers whether "the state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[65]

The KCOA found that the district court's error was harmless because Petitioner's only argument as to how the transcript was prejudicial was that "[t]he evidence was not overwhelming," and further, Petitioner "failed to allege the transcript was inaccurate in any way."[66]  Admission of transcripts is not prejudicial error unless an inaccuracy exists.[67] Accordingly, the Court finds the KCOA decision was not contrary to, or involve an unreasonable application of, U.S. Supreme Court precedent, nor was it based on an unreasonable determination of the facts.

### B.      Ineffective Assistance of Counsel

As discussed above, the Court reviews Petitioner's ineffective assistance of counsel claim

---

[64] *State v. Davis*, 258 P.3d 387 (Table), 2011 WL 3795243,  at *4–5 (Kan. Ct. App. 2011).

[65] *Williams v. Trammel*, 782 F.3d 1184, 1191 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1)–(2)).

[66] *State v. Davis*, 258 P.3d 387 (Table), 2011 WL 3795243, at *5 (Kan. Ct. App. 2011).  Although Petitioner now argues that he was prejudiced because the transcript refers to T.G. as the "victim," this argument was not raised in his direct appeal and not addressed by the KCOA.

[67] *See United States v. King*, 272 F.3d 366, 372 (6th Cir. 2001).

under the familiar test set forth in *Strickland v. Washington*, which requires Petitioner to show that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) counsel's performance prejudiced his defense.[68]  When reviewing an ineffective assistance claim under § 2254(d)(1), the Court applies a "doubly deferential" standard: it must determine whether the relevant state court decision was unreasonable in concluding that counsel's performance did not meet the deferential *Strickland* test.[69]  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard."[70]  For purposes of review under 28 U.S.C. § 2254, the relevant state court decision as to Petitioner's ineffective assistance claims is the KCOA decision denying state habeas relief under K.S.A. § 60-1507.

### 1.      Appellate Counsel

Petitioner asserts two claims of ineffective assistance of appellate counsel: (1) "[w]hen briefing 'Issue II: The district court erred by allowing the use of and admitting into evidence a transcript prepared of the videotaped interview of T.G.[,]' appellate counsel failed to argue or cite any controlling precedents, e.g. *Chapman v. California*, which [places] the burden of proof regarding prejudice on the party [benefitting] from an error"[71] and (2) appellate counsel incorrectly briefed the issue of multiple acts or unanimity instructions and then shifted arguments during oral argument, which resulted in abandonment of the entire issue.

### i.      Unanimity/Multiple Acts

Petitioner's ineffective assistance claim regarding unanimity/multiple acts is procedurally

---

[68] 466 U.S. 668, 687–88 (1984).

[69] *Id.* at 123.

[70] *Grant v. Royal*, 886 F.3d 874, 904 (10th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

[71] Doc. 1-1 at 7.

complex. The Government asserts that the claim is procedurally defaulted because it "appears this claim first arises in Petitioner's petition for review" to the Kansas Supreme Court.[72] On closer review, the Court finds that Petitioner first raised this issue in his original K.S.A. § 60-1507 motion and initial appeal,[73] although he failed to raise it in his subsequent appeal following the KCOA's remand to the district court.

The issue regarding multiple acts/unanimity first appears in the record on direct appeal. Petitioner's original appellate counsel, Theresa Barr, briefed and argued that the district court erred by refusing to give an unanimity instruction with regard to multiple acts alleged.[74] After briefing, but prior to oral argument, Barr left the office, and Shawn Minihan was appointed as Davis' appellate counsel. At oral argument on direct appeal, Minihan argued that the case was not a multiple acts case requiring a unanimity instruction and instead argued that the case was "an alternative means case."[75] The KCOA found that the multiple acts/unanimity issue was abandoned and refused to consider Petitioner's argument that the case was an alternative means case, finding that it was a new issue not properly before the court.[76]

In Petitioner's *pro se* appeal of the district court's original denial of his K.S.A. § 60-1507 motion as untimely and successive, he points the court to his "K.S.A. § 60-1507 motion (R, I, 3, 27–32)," where Petitioner specifically alleges that appellate counsel was ineffective with regard to the multiple acts/unanimity issue.[77] The KCOA remanded back to the district court without consideration of the merits, finding that a portion of Petitioner's motion was not untimely or

---

[72] Doc. 22 at 21.

[73] Case No. 15-114436-A, R. II at 28–29.

[74] Case No. 09-103543-A, Brief of Appellant at 11–17 .

[75] *State v. Davis*, 258 P.3d 387 (Table), 2011 WL 3795243, at *3 (Kan. Ct. App. 2011).

[76] *Id*.

[77] No. 13-110387-A, Brief of Appellant at 36.

successive.  The district court conducted a two-day evidentiary hearing on the merits of Petitioner's claims and again denied Petitioner's motion.

Petitioner appealed again, alleging ineffective assistance of appellate counsel for "failure to conduct an adequate legal investigation, the failure to cite controlling precedents, the failure to raise issues or to perfect the appeal."[78]  On its second review of Petitioner's K.S.A. § 60-1507 motion, the KCOA considered the merits of "three separate allegations of appellate counsel's alleged ineffectiveness," specifically, (1) inadequate knowledge of applicable caselaw; (2) incorrect briefing on the issue of prejudice, and (3) failing to raise Brady violations.  Notably, these three headings correspond to the issued raised by Petitioner in the text of his briefing; the briefing *does not* assert an issue regarding multiple acts/unanimity instructions.[79]  Accordingly, the merits of this claim were never considered by the KCOA.[80]  Finally, Petitioner raised the issue in his Petition for Review to the Kansas Supreme Court, but the court denied cert.[81]

As discussed above, "[a petitioner] must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[82]  Although the claim appears sporadically throughout the record, because Petitioner failed to present the claim to the KCOA in its review of the merits of his 60-1507 motion, his claim is procedurally defaulted.  Accordingly, the Court considers whether Petitioner has established cause and prejudice to excuse the default.

---

[78] No. 15-114436-A, Brief of Appellant at 47–48.

[79] *Id.* at 48–50.

[80] *Davis v. State*, 380 P.3d 719 (Table), 2016 WL 5344256, at *11 (Kan. Ct. App. 2016). Although the opinion includes a description of the testimony from Petitioner's appellate counsel discussing the multiple acts briefing, the KCOA does not analyze the claim.

[81] Case No. 15-114436-A, Appellant's Petition for Review at 15.

[82] *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014).

To show cause, Petitioner must demonstrate "that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules."[83] Petitioner does not point to any external factors; rather, he points to "the confusion" because this claim was "encompassed within the claim that counsel failed to conduct an adequate legal investigation."[84] However, the text of Petitioner's "adequate legal investigation" claim makes no mention of the issue. Inartful pleading is not fatal to a *pro se* claim, but the claim must be presented to the state court; here, the claim was not presented to the KCOA during its review of the merits of Petitioner's claims. As Petitioner has not established any objective external factor, the Court finds that Petitioner cannot excuse the default.

### ii.     Burden of Proof

Next, Petitioner challenges the KCOA's determination that appellate counsel's briefing on the issue of the "burden of prejudice" was not constitutionally ineffective. Petitioner argues that the State improperly suggested that he carried the burden of proving harmlessness with regard to admission of a transcript, and his counsel failed to properly grapple with the issue on appeal. The KCOA determined:

> Presently, our Kansas law requires that the party benefitting from an error must prove that error is harmless. But when Barr and the State each filed their briefs in Davis' direct appeal, the burden of proving harmlessness varied depending on the type of error asserted . . . The case establishing that the party benefitting from nonconstitutional error must prove harmlessness was not filed until the following year.[85]

Based on this assessment of the law, the KCOA found Petitioner's counsel was not ineffective.

This decision was not contrary to nor an unreasonable application of *Strickland* or other

---

[83] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[84] Doc. 31 at 21.

[85] *Davis v. State*, 380 P.3d 719 (Table), 2016 WL 5344256, at *12 (Kan. Ct. App. 2016).

federal law.  At the time appellate counsel filed Petitioner's brief in the direct appeal, "the party alleging the [abuse of discretion] bears the burden of proving that his or her substantial rights to a fair trial were prejudiced."[86]  As Petitioner was the party alleging that his substantial rights to a fair trial were prejudiced, appellate counsel could not have briefed the issue differently. Accordingly, the Court finds that the KCOA decision was not contrary to *Strickland*.

### 1.    Trial Counsel

Petitioner's first point of error is that trial counsel was ineffective in failing to call a medical expert to rebut the State's expert witness.  He argues that a medical expert must be consulted by defense counsel in child sexual abuse cases, and the expert who testified at his evidentiary hearing attested that "without question" Petitioner's defense would have been more effective with a qualified medical expert.[87]

The KCOA found that trial counsel's decision not to hire a medical expert was "both a strategic and practical" choice, and explicitly rejected Petitioner's argument that a medical expert was required [88]  The state's medical expert testified at trial that there no physical injury to the victim and opined that this was not abnormal.  At the evidentiary hearing, trial counsel testified that it was difficult to find an expert because he needed an expert who would say something to the effect of "that's crazy, of course you're going to find physical evidence."[89]  He also testified that he spoke to a doctor in Wichita "who had done some testimony before and was refusing to now."[90]  Based on these facts, the KCOA found that it was reasonable for counsel to rely on

---

[86] *State v. White*, 161 P.3d 208, 216 (Kan. 2007)

[87] Doc. 31 at 44.

[88] *Davis*, 2016 WL 5344256, at *7.

[89] *Id*. at *6.

[90] *Id*.

good cross-examination techniques.

The KCOA also found that the absence of a medical expert was not prejudicial. Petitioner hired an expert, Evangeline Barefoot, to testify at his evidentiary hearing. Although Barefoot testified that she would expect to see some sign of physical injury, the amount of time between the assault and the examination in this case—6 days—"'push[ed] th[e] limit' of evidence collection.'"[91] The KCOA found nothing in Barefoot's testimony "serves to undermine confidence in the result of the jury trial."[92] Although Petitioner claims that the KCOA factual findings are "contradicted by the evidence presented,"[93] the Court finds this contention to be without merit. The KCOA decision was a reasonable application of *Strickland* based on the testimony of both Petitioner's trial counsel and his own expert witness.

Petitioner also asserts that the KCOA's decision was an "unreasonable application of . . . *Wiggins v. Smith, 539 U.S. 210 (2003)*."[94] In *Wiggins*, the United States Supreme Court held that trial counsel's failure to investigate mitigating evidence in a capital case was unreasonable.[95] The present case is not a capital case, and the KCOA found that trial counsel did investigate the possibility of presenting an expert witness.[96] Accordingly, *Wiggins* is distinguishable, and the Court finds that the KCOA decision was not contrary to U.S. Supreme Court precedent.

Petitioner's second point of error is that trial counsel was ineffective in failing to investigate other witnesses—namely, Howell Solberg, the victim's stepfather—who would have testified that the victim was exposed to sexual acts by her mother, providing another basis for the

---

[91] *Id.* at *7 (alteration in original).

[92] *Id.*

[93] Doc. 31 at 46.

[94] Doc. 31 at 55 (alteration in original).

[95] *Wiggins v. Smith*, 539 U.S. 510, 525 (2003).

[96] *Davis*, 2016 WL 5344256, at *6.

victim's advance sexual knowledge. The KCOA found that counsel's decision not to call Solberg was not ineffective because (1) the decision was strategic because trial counsel did not believe that any evidence concerning the victim's mother would be admissible and (2) at the evidentiary hearing, Solberg testified that he did not know whether the children witnessed any sexual acts—although a filing from a previous case "provided that credible evidence suggested that [the victim's] mother performed sex acts in front of the children"—and therefore, the testimony would not have added anything significant to the defense.[97]

Petitioner asserts that this determination is unreasonable because counsel did not investigate what information Solberg would have provided, and Solberg could have been impeached or had his memory refreshed with regard to whether the children witnessed sexual acts. The Court finds, however, that the KCOA's decision was reasonable. The determination of what witnesses to call are a matter of trial strategy by trial counsel.[98] The KCOA determined that counsel had a strategic reason for refusing to offer Solberg's testimony—that he believed it would be inadmissible—and further, there was no prejudice because Solberg explicitly testified at the evidentiary hearing that he did not know whether the children witnessed sexual acts. Given the doubly deferential standard that applies here, as well as both trial counsel and Solberg's testimony, the Court finds that the KCOA's decision was not contrary to *Strickland*.

Finally, Petitioner asserts that trial counsel was ineffective for failing to adequately impeach the victim because he did not secure or utilize written records or impeach on several crucial discrepancies. The KCOA found that counsel "thoroughly questioned" the victim, impeaching her on a "several topics including the timeline and specifics of the assaults," even

---

[97] *Id*. at *8.

[98] *Boyle v. McKune*, 544 F.3d 1132, 1129 (10th Cir. 2008).

though he missed some inconsistent statements.[99]  The KCOA also found that Petitioner could not establish prejudice because the victim's testimony was not "so radically inconsistent from either her previous statements or reality as to undermine the confidence of the trial's outcome."[100]

Petitioner alleges that trial counsel failed to address a number of critical inconsistencies, including whether the abuse occurred "once" versus "three times a week . . . for almost a year,"[101] and responds that these inconsistencies "cannot reasonably be considered minor."[102] While the Court tends to agree that there is no strategic advantage or reasonable rationale for failing to impeach on this critical detail,[103] on close review of the record, the Court finds Petitioner's contention that counsel did not impeach on this detail to be unsupported.  The transcript from the original videotaped interview of the victim does indicate that the victim originally told police that the abuse had occurred "once," but immediately afterward, the victim indicated that it occurred multiple other times.[104]  Further, counsel did impeach the victim on her testimony regarding "three times a week":

> Counsel: Yeah, what I'm asking is, is as you sit here today what you can remember, not what you remember that you've told other people about that last time that it happened?
> Victim: It's all pretty much a blur because it happened like three times a week, you know, for almost a year. So, I mean, it all comes together.
> Counsel: Okay. Let me follow that up with this. Have you ever told anybody three times a week before today?
> Victim: No, I've told them that it happened a lot.
> Counsel: Okay. But this is the first time that you've quantified it to

---

99 *Davis*, 2016 WL 5344256, at *9.

100 *Id.*

101 Doc. 31 at 51.

102 Doc. 31 at 49.

103 *See Skaggs v. Baker*, No. 18-3202, 2019 WL 2144304, at *5 (10th Cir. May 15, 2019).

104 Case No. 03CR344, Transcript of Video Interview at 13–14.

three times a week?
Victim: Yes.[105]

The KCOA found that the omissions were not unreasonable because counsel impeached the victim on several topics, and the victim acknowledged that "her memory of the assaults had faded."[106]  Moreover, the KCOA found there was no prejudice because the jury heard the live witness testimony and watched the interview that contained the inconsistencies.  Because "the jury was clearly apprised of [the] facts,"[107] and counsel "discredit[ed] the witness in other ways,"[108] the KCOA found counsel was not ineffective.  The Court finds that the KCOA was not unreasonable in applying *Strickland*.

Finally, Petitioner asserts, without elaboration, that the KCOA improperly applied *Strickland* here, contrary to the Tenth Circuit's opinion in *Bledsoe v. Bruce* with regard to prejudice.[109]  In *Bledsoe*, the Tenth Circuit found that the Kansas Supreme Court correctly applied the Strickland requirement of prejudice—"a reasonable probability of a different outcome"—even though it noted that "in the hands of another defense lawyer, the case may have been tried to another conclusion.[110]  In the present case, the KCOA determined there was no prejudice because the testimony was not "so radically inconsistent . . . as to undermine the confidence of the trial's outcome."[111]  The Court finds the KCOA properly applied the prejudice prong of *Strickland*.

---

[105] Case No. 03CR344, R. VIII at 103–04.

[106] *Davis v. State*, 380 P.3d 719 (Table), 2016 WL 5344256, at *9 (Kan. Ct. App. 2016).

[107] *Id*. (citing *State v. Coones*, 339 P.3d 375, 387 (2014)).

[108] *Id*. (citing *Boldridge v. State*, 289 Kan. 618, 640, 215 P.3d 585, 600 (2009).

[109] 569 F.3d 1223

[110] *Id*. at 1232.

[111] *Davis*, 2016 WL 5344256, at *9.

## IV.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases requires the federal district court reviewing a habeas petition to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Under U.S.C. § 2253(c)(2), the court may issue a certificate of appealability "only if the applicant makes a substantial showing of the denial of a constitutional right."  A petitioner must demonstrate either that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" or that issues in the petition are "adequate to deserve encouragement to proceed further."[112]  Moreover, a movant does not need to demonstrate his appeal will succeed to be entitled to a Certificate of Appealability, but must "prove something more than the absence of frivolity or the existence of mere good faith."[113]

For the same reasons explained above, the Court denies a certificate of appealability on the issues raised in Petitioner's habeas petition.  His due process claim is procedurally defaulted, and he has failed to make a substantial showing that he was denied his constitutional right to effective counsel.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Paul Davis' Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is denied.

**IT IS SO ORDERED.**

Dated: June 10, 2019

s/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[112] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

[113] *United States v. Williams*, 410 F. App'x 97, 99 (10th Cir. 2010) (citation omitted).